IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01494-RMR-KAS

BRANDON LEE DIAZ DELEON,

      Plaintiff,

v.

AUGUST LINNEMEYER,
TIFFANY MIZELLE,
JESSICA LINNEMEYER-SCHLAGEL,
JOSEPH YANCY,
HANNAH BEVARD,
HALEY PHROPER,
SHANE WHITMORE,
JACOB A. STARKOVICH,
PEOPLE OF THE STATE OF COLORADO,
COUNTY OF KIT CARSON, COLORADO,
CITY OF BURLINGTON, COLORADO,
13TH JUDICIAL DISTRICT COURT, COLORADO,
STATE OF COLORADO PUBLIC DEFENDER OFFICE,
SUE CAMBELL,
BRIAN JOHNSON, Attorney Number 46182,
JUSTIN HEINLEIN,
MARTY GREEK,
ELIZABETH DELUCA,
BRITNEY LEWTON,
DEBORAH EURICH,
ADVANTAGE TREATMENT CENTER,
DOUGLAS CARRIGAN,
BRIAN LYNCH,
NOAH MERAZ,
ETHAN ICE, #42430,
COLORADO LEGAL DEFENSE GROUP,
LOGAN COUNTY, by and through its Board of County Commissioners,
BRETT POWELL, Logan County Sheriff,
LOGAN COUNTY JAIL,
JENNELYSE BRUNSTING,
DIANA VENTURA,
DIRECTOR OF COLORADO DEPARTMENT OF CORRECTIONS, and
WARDEN OF COLORADO TERRITORIAL CORRECTIONAL FACILITY,

      Defendants.

_____

## RECOMMENDATION AND ORDER OF THE UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the following Motions:

(1) Defendants Shane Whitmore and City of Burlington's **Motion to Dismiss Amended Complaint** [#81] ("Burlington's Motion");

(2) Defendants Advantage Treatment Center, Douglas Carrigan, Brian Lynch, and Noah Meraz's **Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [#83] ("Advantage Defendants' Motion");

(3) Defendants State of Colorado, the Thirteenth Judicial District Court of Colorado, the State of Colorado Public Defender's Office, Brian Johnson, Justin Haenlein[1], Marty Greek, and Elizabeth DeLuca's **Motion to Dismiss the Amended Complaint** [#88] ("State Defendants' Motion");

(4) Defendants the Logan County, by and through its Board of County Commissioners, Logan County Sheriff Brett Powell (official capacity), and the Logan County Jail's **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** [#94] ("Logan County Defendants' Motion"); and

(5) Defendant Jacob A. Starkovich's **Motion to Dismiss** [#100] ("Starkovich's Motion").

Plaintiff, who proceeds in this matter as a pro se litigant,[2] filed a combined Response [#106] to all Motions to Dismiss [#81, #83, #88, #94, #100], and all Defendants filed a Reply [#111, #117, #116, #110, #115, respectively]. The Motions have been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal

_____

[1] This defendant's surname is misspelled on the caption as "Heinlein." The correct spelling is "Haenlein." *See State Defendants' Motion* [#88] at 1 n.1.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Rule of Civil Procedure 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *Orders Referring Motions* [#85, #89, #95, #101]. The Court has reviewed the briefs, the entire case file, and the applicable law. Based on the following, the Court **RECOMMENDS** the Motions [#81, #83, #88, #94, #100] be **GRANTED**.

### I.    Plaintiff's Allegations

Plaintiff names 33 Defendants, and his allegations span five years. *See generally Am. Compl.* [#75].  Although only seventeen Defendants move to dismiss, the Court summarizes most of Plaintiff's allegations, organized by relevant Defendant groups.

### A.    Defendants Tiffany Mizelle, City of Burlington Police Officer Kevin Whitmore, August Linnemeyer, Joseph Yancy, and Hannah Bevard

On November 16, 2017, Defendant Mizelle contacted Defendant Officer Whitmore to report that on July 24, 2017, Plaintiff sexually assaulted her minor daughter, Defendant August Linnemeyer. *Am. Compl.* [#75] at 10. Mizelle, who lived in Nebraska, explained that her family vacationed in Burlington, Colorado, during the summer of 2017. *Id.* at 11. Around July 24, 2017, Linnemeyer told Mizelle that she and Plaintiff had kissed in the backyard that night. *Id.* But on November 16, 2017, Linnemeyer stated that she and Plaintiff had sex in the backyard on July 24, 2017. *Id.* Linnemeyer explained that she had been drinking, recalled Plaintiff on top of her, and that when she woke up, she "believed she had bruises on her legs," and Plaintiff was gone. *Id.* at 12.

Officer Whitmore interviewed Linnemeyer, who reported that she met Plaintiff at the Kit Carson County Fair that summer, began communicating on Snapchat, and a few weeks later, waited for her mother and brother to fall asleep before asking Plaintiff to come to her house. *Id.* at 13. Plaintiff arrived with a friend and two bottles of liquor. *Id.* Plaintiff and Linnemeyer walked to the side of the backyard and consumed both bottles. *Id.* She

recalled seeing the empty bottles in the trash the next day. *Id.* Linnemeyer stated that Plaintiff told her to lie on the grass, pushed her shoulders down until she complied, removed his shirt, climbed on top of her, and removed his pants. *Id.* She nudged him to get off, but after he removed her sweatpants and underwear, she "just let it happen." *Id.*

When they heard the garage door open, Plaintiff put on his pants and ran with his friend to their truck. *Id.* at 14. Linnemeyer redressed before her brother, Joseph Yancy, came outside. *Id.* He later took her tablet and saw her chats with Plaintiff. *Id.* Two days later, she told her brother and his fiancée, Hannah Bevard, about the events. *Id.* Officer Whitmore interviewed Bevard, who stated that Linnemeyer never reported the events to her. *Id.*

On January 7, 2018, Whitmore met with Yancy, who reported seeing his sister in the backyard around 2:00 or 3:00 a.m. on July 24, 2017, heard someone at the fence but saw no one, and later discovered Linnemeyer's Snapchat messages with Plaintiff. *Id.* at 15. Yancy stated that he waited two days before telling his mother. *Id.*

**B.    Defendants Jacob A. Starkovitch, Elizabeth DeLuca, Deborah Eurich, and Britney Lewton**

On January 22, 2018, Plaintiff was charged with felony sexual assault, sexual assault on a child, and contributing to the delinquency of a minor. *Id.* at 16. Plaintiff retained Defendant Starkovich, who pressured him to plead guilty. *Id.* On June 11, 2018, Plaintiff entered a plea agreement, pleading guilty to attempted sexual assault and unlawful sexual contact in exchange for a four-year deferred judgment. *Id.* Upon completing probation, Plaintiff could withdraw his guilty plea, the court would vacate his convictions, dismiss the charges, and expunge his record. *Id.* at 17. The court sentenced Plaintiff accordingly on November 13, 2018. *Id.*

Within days, the State and Defendant DeLuca moved to add conditions to Plaintiff's probation. *Id.* Starkovich took no action, and the court granted the motion. *Id.* The court placed Plaintiff in sex-offender therapy at First Step Recovery. *Id.* Because Plaintiff maintained his innocence, the program deemed him "in denial" and therefore noncompliant with probation. *Id.* Defendants DeLuca, Eurich, and Lewton then petitioned the court to place Plaintiff under restrictive supervision at Defendant Community Corrections Advantage Treatment Center ("Advantage Treatment Center"). *Id.* Plaintiff was arrested, and Starkovich subsequently withdrew from the case. *Id.* at 18.

## C.    Defendants Public Defender Brian Johnson, Advantage Treatment Center, Douglas Carrigan, Noah Meraz, Bryan Lynch, and State District Judge Justin Haenlein

On January 6, 2019, Defendant Public Defender Johnson entered an appearance on Plaintiff's behalf. *Id.*[3] The court vacated the original deferred judgment and sentenced Plaintiff to four years' confinement at Advantage Treatment Center and two years in the county jail. *Id.* Plaintiff entered Advantage Treatment Center on July 18, 2019, having served 50 days of pre-sentence confinement. *Id.*

According to Plaintiff, on January 3, 2022, Defendants Carrigan, Meraz, and Lynch, owner and employees, respectively, of Advantage Treatment Center, wrote a letter to the state court stating that Plaintiff had served 894 days without incident, earned 229 days of good time credit, and requesting the court transfer him to prison for the remainder of his sentence. *Id.* On January 12, 2022, Defendant Judge Haenlein issued an order directing Plaintiff to serve four years in the Colorado Department of Corrections, followed by two

_____

[3] Although Plaintiff states that Defendant Johnson entered his appearance on January 6, 2018, *Am. Compl.* [#75] at 18, the context shows the correct date is January 6, 2019. *Id.* at 17–18.

years' mandatory parole. *Id.* Plaintiff attempted to object, arguing he had already served more than his full sentence. *Id.* at 19. Judge Haenlein, Carrigan, Meraz, and Lynch disregarded his objection, and Plaintiff was transferred to prison. *Id.*

On February 27, 2022, Plaintiff filed a petition for a writ of habeas corpus, asserting the state had illegally incarcerated him because he already served his full sentence. *Id.* On April 20, 2022, the state court held a hearing on the petition. *Id.* The court ordered Plaintiff released but required him to serve an additional two years on parole, "even though he had served in excess of the statutory maximum sentence as of that date." *Id.* at 20.

**D.    Defendants Diana Ventura, Colorado Parole Officer Jennelyse Brunsting, Logan County Jail, Logan County Sheriff's Department, Logan County Sheriff, and Marty Greek**

Plaintiff's ex-girlfriend, Defendant Ventura, conspired with Defendant Parole Officer Brunsting to order Plaintiff to report to a parole office for a hearing. *Id.* Upon arrival, Defendant Brunsting conducted an illegal search of Plaintiff's vehicle, which he had borrowed from his father, and seized his father's cellphone and pocketknife. *Id.* Brunsting then arrested Plaintiff for a parole violation. *Id.* During booking at the Logan County Jail, Plaintiff informed Defendant Sheriff Powell that he was not supposed to be on parole, but the Sheriff ignored his statements. *Id.* Defendants DeLuca and Greek prepared parole revocation documents knowing Plaintiff was not supposed to be on parole. *Id.* at 22.

On May 24, 2022, Plaintiff's counsel filed an emergency motion for immediate release from custody, detailing his sentence(s) and time served. *Id.* at 21. On June 22, 2022, Judge Haenlein granted the motion, finding Plaintiff had completed his entire

sentence by the date of his arrest, that the court had imposed an unlawful sentence, and ordering Plaintiff's immediate release without probation. *Id.*

Plaintiff brings this action under 42 U.S.C. § 1983, asserting six claims against Defendants. *Am. Compl.* [#75] at 23–26. The claims are: (1) false arrest/false imprisonment; (2) malicious prosecution; (3) fabrication of evidence; (4) conspiracy; (5) municipal liability; and (6) excessive confinement. *Id.* He asserts the first four claims against all Defendants, the fifth claim against Defendant City of Burlington, and the sixth claim against Defendants Judge Haelein, Carrigan, Lynch, Meraz, Logan County Jail, Logan County Sheriff Powell, and Logan County. *Id.* at 20-21, 23-28. Plaintiff seeks more than $10,000,000 in compensatory, punitive, and nominal damages. *Id.* at 29.[4]

## II.    Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). In other words, "[a] Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotations omitted). Article III standing is a threshold question of subject

---

[4] In his Response, Plaintiff references claims for injunctive and declaratory relief. *Response* [#106] at 14. However, he did not request such relief in his Amended Complaint and cannot amend his pleading through a response to a motion to dismiss. *LeClear v. State Farm Mut. Auto. Ins. Co.*, No. 24-cv-01482-NYW-NRN, 2025 WL 843750, at *5 (D. Colo. Mar. 18, 2025).

matter jurisdiction, which courts consider pursuant to Rule 12(b)(1). *Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021).

"Rule 12(b)(1) challenges may take two different forms." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotation marks omitted). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff*, 65 F.4th at 507. However, a court is not "bound by conclusory allegations, unwarranted inferences, or legal conclusions." *Turner v. United States*, 501 F. App'x 840, 842 (10th Cir. 2012) (quoting *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994)). Additionally, when "a party attacks the factual basis for subject matter jurisdiction, the court may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997).

## B.      Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa*

*Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint

includes 'well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State

Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the

elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked

assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal

quotations and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the

complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC

Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule

12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]"

*Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)

(citation omitted).

### III.    Analysis

### A.    False Arrest/Imprisonment (Claim 1)

Plaintiff asserts false arrest/imprisonment claims arising from his initial arrest and

prosecution.[5]  *Am. Compl.* [#75] at 23. Defendants argue Plaintiff's false

arrest/imprisonment claims are time-barred. A "hodgepodge of state and federal law

governs the timeliness of claims under 42 U.S.C. § 1983." *Carbajal v. McCann*, 808 F.

---

[5] To the extent Plaintiff asserts excessive confinement claims arising from his January 12, 2022
sentencing and April 20, 2022 arrest, *see Am. Compl.* [#75] at 18-20, those claims are analyzed
separately herein.

App'x 620, 633 (10th Cir. 2020) (citation omitted). Federal law determines when the claim accrues and the limitations period begins to run, but the length of the limitations period comes from the state personal-injury statute. *Id.* Colorado provides a two-year statute of limitations for personal injury actions. COLO. REV. STAT. § 13-80-102; *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020). State law also governs tolling, subject to rare equitable tolling under federal law. *Carbajal*, 808 F. App'x at 633.

A § 1983 claim for false arrest/imprisonment may give rise to two constitutional claims: one under the Fourth Amendment and another under the Due Process Clause of the Fourteenth Amendment. *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). The Fourth Amendment claim covers the period between an unlawful arrest and the institution of legal process. *Id.* "[L]egal process" occurs when a plaintiff is bound over by a magistrate or arraigned on charges. *Id.* at 1083 (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). The claim accrues when the plaintiff is released or when legal process begins. *Id.* The Fourteenth Amendment claim covers the period between the institution of legal process and its favorable termination (e.g., acquittal, dismissal, or habeas relief). *Id.* at 1083. Thus, it accrues upon favorable termination. *Id.*[6]

Plaintiff was charged on January 22, 2018, and formally entered guilty pleas on June 11, 2018. *Am. Compl.* [#75] at 16. Accordingly, the statute of limitations for this claim began to run in 2018 and expired two years later, in 2020. *See Wallace*, 549 U.S. at 397 ("We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal

---

[6] As discussed in the following section, any Fourteenth Amendment false arrest/imprisonment claim fails because Plaintiff's criminal proceedings did not terminate in his favor.

proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."). Because Plaintiff did not file this lawsuit until 2024, *see Compl.* [#1], his Fourth Amendment claim is time-barred.

Alternatively, a Fourth Amendment false arrest claim requires showing that the arresting officer lacked probable cause. *Bell v. City & Cnty. of Denver*, No. 22-cv-01805-RM-MEH, 2023 WL 11867011, at *5 (D. Colo. Mar. 16, 2023) (citing *Virginia v. Moore*, 553 U.S. 164, 171 (2008); *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)). Plaintiff entered guilty pleas to the charges, resulting in convictions. *Am. Compl.* [#75] at 16. "A 'guilty plea establishes probable cause' and 'constitutes justification and is a complete defense to an action for false arrest.'" *Bell*, 2023 WL 11867011, at *5 (quoting *Guinn v. Unknown Lakewood Police Officers*, No. 10-cv-00827-WYD-CBS, 2010 WL 4740326, at *6 (D. Colo. Sept. 30, 2010)) Thus, Plaintiff's guilty pleas provide an independent basis to dismiss his Fourth Amendment claims.

Accordingly, the Court **recommends** the Motions [#81, #83, #88, #100] be **granted** and Plaintiff's Fourth Amendment false arrest/imprisonment claims be **dismissed with prejudice**. *See  Womble v. Salt Lake City Corp.*, 84 F. App'x 18, 21 (10th Cir. 2003) (holding that a claim falling outside the applicable limitations period is dismissed with prejudice).

## B.    Malicious Prosecution/Fabrication of Evidence (Claims 2 and 3)

Plaintiff next asserts Defendants initiated and continued criminal charges against him with malice and for an improper purpose. *Am. Compl.* [#75] at 23. He further contends that Defendants "fabricated, concealed, or destroyed evidence" supporting the charges, including "false and misleading reports, affidavits, and testimony of the police officers and

investigators," "false and misleading forensic and medical evidence [about] which Defendant Whitmore lied," and "exculpatory and impeachment evidence that was favorable to Plaintiff and . . . was withheld from him and his counsel." *Id.* at 24.

Although Plaintiff asserts fabrication of evidence as a separate claim, his allegations primarily support a single claim for malicious prosecution. A malicious prosecution claim arises under § 1983 when officials "conspire to procure groundless state indictments and charges based upon fabricated evidence or false, distorted, perjurious testimony presented to official bodies in order to maliciously bring about a citizen's trial or conviction." *Winslow v. Romer*, 759 F. Supp. 670, 675 (D. Colo. 1991) (quoting *Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir. 1985)). Here, Plaintiff seeks relief under the Fourth and Fourteenth Amendments. *See Am. Compl.* [#75] at 23. However, to the extent Plaintiff seeks remedies under the Fourteenth Amendment for deprivations of liberty without due process, his claim must fail because a state tort claim for malicious prosecution is the "effective antidote." *Lewandowski v. City of Longmont*, No. 23-CV-01897-PAB-NRN, 2024 WL 6475773, at *5 (D. Colo. Aug. 7, 2024) (considering the plaintiff's malicious prosecution claim only under the Fourth Amendment) (quoting *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013)), *report and recommendation adopted*, 2024 WL 6475770 (D. Colo. Aug. 27, 2024). Therefore, the Court will only consider Plaintiff's claim through a Fourth Amendment lens.

The elements of a Fourth Amendment malicious prosecution claim are "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) *the original action terminated in favor of the plaintiff*; (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff

sustained damages." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis in the original); *see also Thompson v. Clark*, 596 U.S. 36, 39 (2022) (explaining that to maintain a malicious prosecution claim under § 1983, a plaintiff "must demonstrate, among other things, that he obtained a favorable termination of the underlying criminal prosecution") (emphasis omitted). A prosecution terminates favorably for these purposes when it ends without a conviction. *Id.* at 49 (explaining that a plaintiff need not show "that the criminal prosecution ended with some affirmative indication of innocence"; rather, he "need only show that the criminal prosecution ended without a conviction").[7]

Case law establishing that a malicious prosecution claim requires favorable termination of the underlying prosecution derives from *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Thompson*, 596 U.S. at 39 (relying on *Heck*). In *Heck*, the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486-87 (footnote omitted).

Although neither the City of Burlington Defendants nor the State Defendants cite specifically to *Heck* in their Motions [#81, #88], Plaintiff recognizes the underlying basis

_____

[7] On this point, the State Defendants cite outdated and abrogated case law, *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2010), for the proposition that a favorable termination must indicate the innocence of the accused. *See State Defs.' Motion* [#88] at 11. This was abrogated by the Supreme Court's 2022 *Thompson* decision.

for their arguments and asserts that *Heck* mandates "a stay or dismissal without prejudice—not a merits dismissal with prejudice." *Response* [#106] at 3. In Reply, Defendants Whitmore and City of Burlington state that they did not rely on *Heck because it is* "inapplicable to this case because Plaintiff is no longer incarcerated and has no available habeas remedy." *Reply* [#111] at 3 n.1 (citing *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010)). In *Cohen*, the Tenth Circuit held that a "petitioner who has no available remedy in habeas, *through no lack of diligence on his part*, is not barred by *Heck* from pursuing a § 1983 claim." *Id.* at 1317 (emphasis added).

The Tenth Circuit has clarified that the *Cohen* exception applies only when a plaintiff's inability to obtain habeas relief "is not due to [his] own lack of diligence." *Carbajal v. Hotsenpiller*, 524 F. App'x 425, 428 (10th Cir. 2013) (internal quotations omitted). In *Carbajal*, the court barred a § 1983 claim under *Heck* despite the plaintiff no longer being in custody, reasoning that the plaintiff lacked diligence because he waited a decade to challenge claims he knew of in 2000. *Id.*; *see also Clingerman v. City of Wichita*, No. 23-2435-JWB, 2025 WL 958257, at *4 (D. Kan. Mar. 31, 2025) (holding the *Cohen* exception inapplicable where the plaintiff forfeited § 1983 claims through lack of due diligence in seeking appellate or habeas relief).

Here, Plaintiff's criminal proceedings resulted in convictions for attempted sexual assault and unlawful sexual contact. *Am. Compl.* [#75] at 16. He does not allege these convictions were overturned or vacated. Significant to the *Cohen* exception, Plaintiff does not indicate he sought appellate review or habeas relief regarding his convictions. Although Defendants attempt to disavow the *Heck* basis for dismissal, "when a party presents an argument, [the court is not] constrained by the parties' legal theories." *United*

14

*States v. Spradley*, 146 F.4th 949, 958 (10th Cir. 2025) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court . . . retains the independent power to identify and apply the proper construction of governing law.")).

Accordingly, the Court **recommends** the Motions [#81, #83, #88, #100] be **granted** and Plaintiff's malicious prosecution/fabrication of evidence claims be **dismissed without prejudice**. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice[.]").

## C.    Conspiracy (Claim 4)

Plaintiff also alleges Defendants "conspired among themselves and with others to deprive him of his constitutional rights." *Am. Compl.* [#75] at 24. A conspiracy claim does not stand alone. *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022). It requires "an underlying constitutional deprivation" for which "a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." *Id.* (internal quotation and citation omitted). Here, the Court concluded Plaintiff has not alleged an actionable violation of federally protected rights. Without a valid underlying constitutional claim, Plaintiff cannot maintain a conspiracy claim. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) ("In order to succeed on [a § 1983 conspiracy] claim," the plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right.").

Presuming Plaintiff had alleged an underlying constitutional violation, conclusory claims of conspiracy cannot survive. *Frasier v. Evans*, 992 F.3d 1003, 1025 (10th Cir.

2021). To state a § 1983 conspiracy claim, a plaintiff must allege "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Id.* at 1024 (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010), *abrogated on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021)). A plaintiff must also "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Plaintiff's allegations that Defendants "conspired . . . to deprive him of his constitutional rights," "had a meeting of the minds . . to commit the unlawful acts," and "acted in concert and pursuant to their common plan," *Am. Compl.* [#75] at 24-25, are merely recitation of conspiracy claim elements. Plaintiff does not identify any specific communication, agreement, cooperation, or concerted action from which the Court could infer a conspiracy among Defendants. *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (affirming dismissal where plaintiff did not allege specific facts showing agreement or concerted action). Plaintiff's conclusory allegations are insufficient to state a § 1983 conspiracy claim.

Accordingly, the Court **recommends** the Motions [#81, #83, #88, #100] be **granted** and Plaintiff's conspiracy claim be dismissed without prejudice. *Gee*, 627 F.3d at 1186.

## D.    Municipal Liability (Claim 5)

Plaintiff also asserts a claim for municipal liability against the City of Burlington, alleging that it, among other things, failed to train, supervise, discipline, and control its

police officers, investigators, and prosecutors in performing their duties. *Am. Compl.* [#75] at 25. Like his conspiracy claim, Plaintiff's municipal liability claim fails because the Court has already determined his allegations do not establish a constitutional violation. "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1233 (10th Cir. 2024). The Court's finding that Plaintiff has failed to assert a viable constitutional claim against Officer Whitmore precludes imposing liability on the City of Burlington.

Accordingly, the Court **recommends** the Motion [#81] be **granted** and Plaintiff's municipal liability claim against City of Burlington be **dismissed without prejudice**. *Gee,* 627 F.3d at 1186.

## E.    Excessive Confinement (Claim 6)

Plaintiff brings an overdetention claim against Advantage Treatment Center, Carrigan, Lynch, Meraz, Logan County Jail, Logan County Sheriff Powell, and Logan County alleging they confined him beyond the lawful maximum for his crimes. *Am. Compl.* [#75] at 20-21, 26–28. An overdetention claim arises when a defendant detains a plaintiff longer than the law permits, either because the sentence has expired or for other reasons. *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010).

Plaintiff alleges that on January 3, 2022, Defendants Carrigan, Lynch, and Meraz sent a letter to the state court requesting that he be sent to prison for the remainder of his sentence and stating that he had served 894 days without issue and earned 229 days of good time while at Advantage Treatment Center. *Am. Compl.* [#75] at 18. The letter, however, contradicts Plaintiff's characterization. Therein, Defendants reported Plaintiff repeatedly violated program rules, accumulated thirteen major write-ups, and failed to

comply with program requirements. *ATC Correspondence* [#83-1]. As a result, Advantage Treatment Center removed Plaintiff from the program and recommended only that he complete the remainder of his sentence in the Colorado Department of Corrections, including mandatory parole. *Id.*[8]

Plaintiff also asserts this claim against Defendant Sheriff Powell, in his individual capacity, alleging that Sheriff Powell ignored Plaintiff's assertion that he was not lawfully on parole and therefore improperly confined for a parole violation. *Am. Compl.* [#75] at 9, 20-21.[9]

In *Moya v. Garcia*, 895 F.3d 1229, 1232 n.1 (10th Cir. 2018), the plaintiffs were detained for more than 30 days without arraignment, in violation of New Mexico's fifteen-day statutory requirement, sued the sheriff and jail warden for overdetention. *Moya*, 895 F.3d at 1231. The Tenth Circuit rejected the claims, holding the defendants did not cause the overdetention because only the state trial court could schedule arraignments. *Id.* at 1234. Even if the defendants could have monitored deadlines or requested arraignments, the court reasoned, they lacked authority to secure earlier judicial action. *Id.* (citing *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999)).

The same principle controls here. Plaintiff does not plausibly allege Defendants caused his overdetention. The January 3, 2022 letter recounted Plaintiff's original four-year sentence to Advantage Treatment Center, his entry into the program on July 18,

---

[8] "Courts are permitted to review documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents authenticity.'" *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1129 (10th Cir. 2024) (citation and internal quotations omitted).

[9] The Court addresses Plaintiff's claims against Logan County Jail, Logan County, and Sheriff Powell in his official capacity below.

2019, and the time he had served, including earned time. *ATC Correspondence* [#83-1]. After Plaintiff's removal from the program, the Defendants Carrigan and Lynch on behalf of the Advantage Treatment Center recommended only that he serve the remainder of his existing sentence in the Colorado Department of Corrections. *Id.* They neither imposed nor requested a new sentence, nor did they direct the court to resentence Plaintiff to an additional four-year term. *Id.*

Similarly, Sheriff Powell did not cause Plaintiff's alleged overdetention. Only the court had authority to release Plaintiff. Even if Sheriff Powell credited Plaintiff's assertions, he lacked authority to do so. Because Plaintiff fails to allege facts showing that any of these Defendants caused his alleged overdetention, the claim fails.

Accordingly, the Court **recommends** that the Motion [#83, #94] be **granted** and Plaintiff's claim based on overdetention against Advantage Treatment Center, Carrigan, Lynch, Meraz, and Sheriff Powell, in his individual capacity, be **dismissed without prejudice**. *Gee,* 627 F.3d at 1186.

**F.      Colorado Enhance Law Enforcement Integrity Act ("ELEIA") (Claim 3)**

Construing Plaintiff's Amended Complaint liberally, he also asserts claims under Article II of the Colorado Constitution based on alleged fabrication of evidence. *Am. Compl.* [#75] at 24. Colorado's ELEIA, Colo. Rev. Stat. § 13-21-131, is Plaintiff's only avenue for such claims. "Colorado enacted ELEIA in 2020 to create a cause of action for individuals whose rights are secured by Article II of the Colorado Constitution . . . and subsequently violated by a peace officer." *Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1306 (D. Colo. 2025) (citing COLO. REV. STAT. § 13-21-131). ELEIA allows suit against a peace officer who "subjects or causes to be subjected, including failing to intervene, any

other person to the deprivation of any individual rights" secured by Article II. *Id.* (quoting § 13-21-131(1)). Plaintiff appears to assert this claim against Defendant Whitmore. *Am. Compl.* [#75] at 24.

Officer Whitmore began investigating the allegations underlying Plaintiff's criminal convictions on November 16, 2017, when Mizelle initially reported Plaintiff's alleged assault of her daughter. *Am. Compl.* [#75] at 12. Plaintiff entered guilty pleas on June 11, 2018, and the court sentenced him on November 13, 2018. *Id.* at 16-17. Beyond these dates, Plaintiff's allegations do not implicate Officer Whitmore.

ELEIA "went into 'effect upon passage'" on June 19, 2020. *Est. of Thakuri v. City of Westminster*, No. 19-cv-02412-DDD-KAS, 2024 WL 1152565, at *2 (D. Colo. Mar. 14, 2024) (quoting Colo. Rev. Stat. § 13-21-131). Courts presume statutes operate prospectively unless the legislature clearly indicates otherwise. *Id.* (citing *In re Est. of DeWitt*, 54 P.3d 849, 854 (Colo. 2002)). The Colorado Court of Appeals has held that § 13-21-131 applies prospectively. *Casper v. Olson*, No. 21CA0075, 2022 WL 22924503, at *6 (Colo. App. Apr. 7, 2022). Nothing in the language or structure of ELEIA indicates the General Assembly intended it to operate retroactively. Id.

Because the events underlying Plaintiff's ELEIA claims occurred in 2017 and 2018, before the statute became effective, his claim fails as a matter of law. *Cf. Est. of Thakuri*, 2024 WL 1152565, at *3 (denying leave to amend to add ELEIA claim where underlying events occurred before its passage date). This holds true whether Plaintiff's ELEIA claim is solely directed at Defendant Whitmore or to any of the other Defendants who are alleged to have fabricated evidence to support his sex assault conviction.

Accordingly, the Court **recommends** the Motion [#81] be **granted** and Plaintiff's ELEIA claim be **dismissed with prejudice**. *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("[A] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## G.    Legal Malpractice

Plaintiff contends Defendants Starkovitch and Johnson committed legal malpractice during his 2018 and 2019 criminal proceedings, respectively. *Am. Compl.* [#75] at 8, 17.

Regarding Starkovitch, Plaintiff alleges three instances of malpractice. First, Starkovitch coerced him into pleading guilty. *Id.* at 16. Second, he failed to object to additional probation conditions the State added after Plaintiff entered a plea deal. *Id.* at 17. Third, following Plaintiff's second arrest in late 2018 or early 2019, Starkovitch withdrew, "leaving Plaintiff with no attorney." *Id.* at 18. All events occurred in 2018 or early 2019. *Id.* at 16-18.

Regarding Johnson, Plaintiff asserts that he was appointed on January 6, 2019. *Id.* at 18. Plaintiff alleges Johnson failed to appear, and the court vacated his deferred judgment. *Id.* Although Plaintiff does not specify the date, pursuant to the court's ruling, he entered Advantage Treatment Center on July 18, 2019. *Id.* Thus, Johnson's failure to appear occurred before that date.

In support of dismissal, Defendant Starkovich raises various arguments, including that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law-based legal malpractice claim because the claim "does not share a common nucleus

of operative fact with the federal civil rights claims[.]" *Starkovich Motion* [#100] at 3-4. Defendant Starkovich further argues that the claim is time-barred. *Id*. at 4-5. Defendant Johnson also raises various arguments, including that the malpractice claim is time-barred and that the Colorado Governmental Immunity Act bars the claim. *State Defs.' Motion* [#116] at 4-5.

Colorado imposes a two-year statute of limitations on negligence claims, including legal malpractice. *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004) (citing § 13-80-102(1)). The period begins "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *Id*. (quoting § 13–80–108(1)). Plaintiff knew of all aspects of Starkovitch and Johnson's representation to which he now objects by 2019. *Am. Compl.* [#75] at 18. He filed this lawsuit on May 28, 2024, *see Compl.* [#1], well beyond the limitations period.

In his Response, Plaintiff contends the claims are timely based on "Plaintiff's May 25, 2022 discovery of the pertinent facts." *Response* [#106] at 17. The Amended Complaint identifies only one event near that date: the filing of an emergency motion for immediate release following a parole arrest. *Am. Compl.* [#75] at 21. That motion, asserting that Plaintiff had served his term and was entitled to release without parole, does not relate to Starkovitch or Johnson's 2018–2019 representation.

The Court need not address all arguments presented by Defendants Starkovich and Johnson nor address whether Plaintiff's claims are timely. Because the Court recommends that all the federal claims be dismissed, it need not exercise supplemental jurisdiction over Plaintiff's legal malpractice claim. Plaintiff's legal malpractice claim is not intertwined with the claims over which the Court has original jurisdiction. The allegations

against these two defendants do not accuse them of fabricating evidence, engaging in conduct that purportedly caused baseless charges to be filed against him, or unlawfully confining him. Plaintiff's allegations, rather, concern strategic decisions these two defendants allegedly made during their representation of him in his criminal case. *See Am. Compl.* [#75] at 16-18.

However, even if Plaintiff's legal malpractice claims "form part of the same case or controversy" for the Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), the Court **recommends** that the District Judge decline to exercise supplemental jurisdiction over this claim and **dismiss without prejudice**. If Plaintiff ultimately files suit in state court, that court can determine whether Plaintiff's legal malpractice claim is time-barred. *See Benton v. Herrera*, No. 13-cv-02668-LTB, 2014 WL 5488949, at *2 (D. Colo. Oct. 30, 2014) (declining to exercise supplemental jurisdiction over legal malpractice claim and leaving timeliness issue to the state court).

## H. Defendants State of Colorado, the Thirteenth Judicial District Court of Colorado, the State Public Defender's Office, Johnson, Haenlein, Greek, and DeLuca

Defendants State of Colorado, the Thirteenth Judicial District Court, the State Public Defender's Office, Johnson, Haenlein, Greek, and DeLuca submit the following alternative grounds for dismissal of Plaintiff's claims.

### 1. Sovereign Immunity

Defendants State of Colorado, the Thirteenth Judicial District Court of Colorado, the State Public Defender's Office, Johnson, Haenlein, Greek, and DeLuca, in their official capacities, argue that sovereign immunity bars Plaintiff's claims. *Motion* [#88] at 2-4. Sovereign immunity generally prevents citizens from suing a state in federal court. *N. Ins.*

*Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006). This immunity covers the state, its instrumentalities—including state agencies and judicial districts—and state officials sued in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (treating claims against government officers or employees in their official capacities as claims against the government); *Lessard v. Cravitz*, 686 F. App'x 581, 586 (10th Cir. 2017) (finding that state judicial districts in Colorado enjoy sovereign immunity, citing COLO. CONST. art. VI, § 1); *Snedeker v. Colorado*, No. 1:23-cv-00178-CNS-SBP, 2024 WL 1383501, at *14 (D. Colo. Feb. 29, 2024) (recognizing state public defender offices as state agencies entitled to sovereign immunity), *report and recommendation adopted*, 2024 WL 1374957 (D. Colo. Mar. 31, 2024), *aff'd*, No. 24-1173, 2025 WL 831345 (10th Cir. Mar. 17, 2025).

Congress can abrogate a state's sovereign immunity through statute, or a state can waive it through a "clear expression of its intent to waive." *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 781 (10th Cir. 2008). The State of Colorado has not waived sovereign immunity for § 1983 claims, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and § 1983 does not abrogate a state's immunity. *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985). Accordingly, Plaintiff cannot recover monetary relief from the State of Colorado or its entities under § 1983.

Accordingly, the Court **recommends** the Motion [#88] be **granted** and Plaintiff's claims against Defendants State of Colorado, the Thirteenth Judicial District Court of Colorado, the State Public Defenders Office, and Defendants Deluca, Johnson, Haenlein, and Greek, in their official capacities, be **dismissed without prejudice**. *See Wauford v. Richardson*, 450 F. App'x 698, 699 (10th Cir. 2011) (holding that claims dismissed based

on sovereign immunity "should have been dismissed without prejudice" for lack of subject matter jurisdiction).

### 2. Defendants Johnson, in his individual capacity, and Starkovitch

Defendants Starkovitch and Johnson move to dismiss Plaintiff's federal claims against them because, as privately retained counsel and a public defender, they did not act under color of state law and therefore are not subject to suit under 42 U.S.C. § 1983. *State Defs.' Motion* [#88] at 10-11; *Starkovitch Motion* [#100] at 2, 5.

Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). When defense attorneys perform the traditional role of counsel in a criminal proceeding—whether as court-appointed or privately retained counsel—they act on behalf of their clients, not the state. Consequently, they do not act under color of state law and cannot face § 1983 liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981); *see also Zapata v. Pub. Defs. Off.,* 252 F. App'x 237, 239 (10th Cir. 2007) ("[A] public defender representing an indigent defendant in a state criminal proceeding does not act under color of state law."). In his Response, Plaintiff indirectly concedes this basis for dismissal. *Response* [#106] at 13-14 (acknowledging that criminal defense attorneys are not state actors, but arguing against their dismissal in light of state law "professional negligence" claim).

Accordingly, the Court **recommends** the Motions [#88, 100] be **granted** and Plaintiff's federal claims against Defendants Starkovitch and Johnson, in their individual capacities, be **dismissed with prejudice**. *See Mays v. Tulsa Cnty. Pub. Defs. Off.*, 354 F. App'x 314, 316 (10th Cir. 2009) (finding no abuse of discretion in dismissing with prejudice the plaintiff's § 1983 claims against the defendant public defender because the defendant was not a state actor).

### 3.    Defendant Judge Haenlein, in his individual capacity

Plaintiff names Defendant Judge Haenlein based on his role presiding over portions of Plaintiff's criminal proceedings. The Amended Complaint does not indicate that Judge Haenlein accepted Plaintiff's guilty pleas or imposed his original sentence. *Am. Compl.* [#75] at 16–17. Instead, Judge Haenlein presided over Plaintiff's case beginning January 12, 2022, when he sentenced Plaintiff to four years' incarceration with the Colorado Department of Corrections, and continued to oversee proceedings through June 22, 2022, when he ordered Plaintiff released and terminated parole. *Id*. at 18-21.

The Supreme Court has long held that judges are immune from suits for money damages. *Fuller v. Davis*, 594 F. App'x 935, 939 (10th Cir. 2014). A judge loses immunity only in two situations: (1) when the act is not judicial in nature, or (2) when the judge acts in complete absence of all jurisdiction. *Id.*

The Tenth Circuit has clarified that a judge acts "in the complete absence of all jurisdiction" only when the court has no subject-matter authority at all. *Stein v. Disciplinary Bd. of Sup. Ct.*, 520 F.3d 1183, 1195 (10th Cir. 2008). When a court has subject matter jurisdiction, the judge determines how to exercise that authority, and errors in doing so do not defeat judicial immunity. *Id*. The Supreme Court illustrated the distinction by explaining

that if a probate judge, who has authority only over wills and estates, tries a criminal case, the judge acts in the clear absence of jurisdiction and loses immunity. But if a criminal court judge convicts a defendant of a non-existent crime, the judges acts in excess of jurisdiction and maintains immunity. *Id*. (citing *Stump v. Sparkman*, 435 U.S. 349, 357 n. 7 (1978)).

According to the Amended Complaint, Judge Haenlein acted as a state court judge presiding over Plaintiff's proceedings. His rulings and sentencing fell squarely within his jurisdiction. Plaintiff contends Judge Haenlein's sentencing was erroneous and resulted in extending his incarceration beyond the lawful maximum. *Am. Compl.* [#75] at 18-21; *Response* [#106] at 7. Judicial immunity protects judges from suits for money damages even if they act in error, with malice, or in excess of their authority. *King v. Marquez*, No. 25-cv-00678-LTB-RTG, 2025 WL 1874910, at *3 (D. Colo. June 6, 2025), *report and recommendation adopted*, 2025 WL 1874908 (D. Colo. June 26, 2025), *aff'd*, No. 25-1259, 2025 WL 2758045 (10th Cir. Sept. 29, 2025). Plaintiff's claims based on disagreements with or alleged errors by Judge Haenlein cannot overcome judicial immunity.

Accordingly, the Court **recommends** the Motion [#88] be **granted** and Plaintiff's claims against Judge Haenlein be **dismissed with prejudice**. *See Smith v. Glanz*, 662 F. App'x 595, 596 (10th Cir. 2016) (affirming dismissal with prejudice based on absolute judicial immunity).

I.    **Defendants Logan County by and through its Board of County Commissioners, Logan County Jail, and Logan County Sheriff Brett Powell, in his individual and official capacities**[10]

1.    **Defendant Logan County Jail**

Defendant Logan County Jail argues that it cannot be sued under 42 U.S.C. § 1983. The Court agrees. *See, e.g.*, *Stone v. Jefferson Cnty. Det. Facility*, 838 F. App'x 348, 350 (10th Cir. 2020) (holding that detention facilities and sheriffs' departments are not suable under § 1983). Because Logan County Jail is not a proper defendant, the Court should dismiss it from this lawsuit.

Accordingly, the Court **recommends** granting Motion [#94] and Plaintiff's claims against Logan County Jail be **dismissed with prejudice**. *See, e.g., Sarnella v. Kuhns*, No. 18-cv-00779-PAB-NYW, 2019 WL 1112388, at *2, 4 (D. Colo. Mar. 8, 2019) (dismissing a sheriff's department with prejudice as a non-suable entity).

2.    **Defendants Logan County and Sheriff Powell, in his official capacity**

Plaintiff does not indicate in his Amended Complaint whether he intended to name Defendant Sheriff Powell in his individual capacity, official capacity, or both. Out of caution, Defendants address claims asserted against them in both capacities. *Logan Cnty. Defs.' Motion* [#94] at 5, 9-11. Defendants explain that an official capacity claim against Sheriff Powell equates to a claim against the government entity he represents. *Id.* at 5 n.2 (citing *Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015)). Although Defendants identify that entity as the Logan County Sheriff's Office, the proper entity is Logan County. *See Cox*,

---

[10] Because Plaintiff's allegations do not involve Defendants Logan County, through its Board of County Commissioners, Logan County Jail, or Sheriff Brett Powell, in his individual or official capacities, until after Plaintiff's 2022 arrest, *Am. Compl.* [#75] at 20–21, their Motion to Dismiss addresses only Plaintiff's excessive confinement claim. *Motion* [#94].

800 F.3d at 1254 (holding that a suit against a sheriff in his official capacity equates to a suit against the county).[11]

A municipality constitutes a "person" subject to § 1983 liability. *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Under *Monell*, municipalities are liable only for their own actions, not vicariously liable for employees' actions. *Crowson v. Wash. Cnty.*, 983 F.3d 1166, 1191 (10th Cir. 2020). To state a municipal liability claim, a plaintiff must adequately allege: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

Regarding the first element, courts recognize several ways to establish an official policy or custom:

1. A formal regulation or policy statement;

2. An informal custom amounting to a widespread practice so permanent and well-settled that it has the force of law;

3. Decisions by employees with final policymaking authority;

4. Ratification by final policymakers of decisions-and the reasoning-of subordinates; or

5. Failure to adequately train or supervise employees when deliberate indifference to foreseeable harm exists.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).

Regarding the second element, i.e., causation, the policy or custom must serve as the "moving force" behind the plaintiff's deprivation of federal rights. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997); *see also Schneider v. City of Grand Junction Police*

---

[11] Moreover, like the Logan County Jail, the Logan County Sheriff's Office is not a suable entity. *Stone*, 838 F. App'x at 350.

*Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (policy or practice must "be closely related" to the violation of federally protected rights). Regarding the third element, a policymaker acts with deliberate indifference when he "consciously" fails to act in the face of an obvious risk of constitutional harm that will almost inevitably result in injury. *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997).

Plaintiff has not identified any Logan County policy or custom that caused the claims asserted in his Amended Complaint. He fails to explain how Logan County's policies affected the events underlying his claims, which begin with an investigation and arrest by Defendant Whitmore, a member of the City of Burlington Police Department. The Amended Complaint mentions a defendant associated with Logan County only in April 2022, when Plaintiff was confined in Logan County Jail following his arrest by Defendant Brunsting, a Colorado Parole Officer. *Am. Compl.* [#75] at 20.

As noted, a municipality may be liable for actions by officials with "final policymaking authority." *Whitson v. Bd. of Cnty. Comm'rs*, 106 F.4th 1063, 1067 (10th Cir. 2024) ("[W]hen an official takes action over which he or she has final policymaking authority, the policymaker *is* the municipality, so it is fair to impose liability on that entity for that action.").  Plaintiff alleges that upon his arrest and booking at Logan County Jail, he informed Sheriff Powell that he was not on parole and that Defendant Brunsting lacked authority to arrest him, but Powell ignored him. *Am. Compl.* [#75] at 9, 20. Defendants note that Plaintiff's arrest and confinement followed a court order placing him on parole and Defendant Brunsting's decision to arrest him. Plaintiff does not allege Sheriff Powell has policymaking authority over court sentencing orders or parole decisions, nor could he.

Because Plaintiff does not allege that his confinement in Logan County Jail resulted from a Logan County policy or final policymaker, his claims against Logan County fail.

Accordingly, the Court **recommends** the Motion [#94] be **granted** and Plaintiff's claims against Defendant Logan County be **dismissed without prejudice**. *Gee,* 627 F.3d at 1186.

## J.    Remaining Defendants

### 1.    Ethan Ice and Colorado Legal Defense Group

As mentioned at the outset, Plaintiff has sued 33 defendants, but only 17 moved to dismiss.

Ethan Ice and the Colorado Legal Defense Group are two defendants merely named in the Amended Complaint, but no allegations are asserted against them. *See generally Am. Compl.* [#75]. Although these two defendants did not file a motion to dismiss or otherwise respond to the Amended Complaint, they previously filed a Motion to Dismiss [#69] in response to Plaintiff's original Complaint [#1], which also named these defendants but did not contain any allegations against them. In that Motion to Dismiss, Defendants Ice and Colorado Legal Defense Group sought dismissal because Plaintiff "failed to allege what acts and/or omissions were committed by [them]." *Motion to Dismiss* [#69] at 4 (arguing that "Plaintiff's pleading is fatally deficient"). The Court agrees.

"[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). This information provides "the defendant sufficient notice to begin preparing its defense and the court

sufficient clarity to adjudicate the merits." *Id*.; *see also Bell Atl. v. Twombly*, 550 U.S. 544 (2007). Here, Plaintiff's allegations provide Defendants no notice as to what they did to Plaintiff, when they did it, how their action harmed him, and what specific legal right Plaintiff believes they violated.

Accordingly, the Court **recommends** that Plaintiff's claims against Defendants Ethan Ice and Colorado Legal Defense Group be **dismissed without prejudice**.

### 2.    Jessica Linnemeyer-Schlagel and August Linnemeyer

On May 1, 2025, in response to a filing by Defendants Linnemeyer-Schlagel and Linnemeyer, the Court ordered the Clerk of Court to "select, notify, and appoint [pro bono] counsel to represent [them] in this civil matter." *Minute Order* [#27] at 3. The Court advised these two defendants that "there is no guarantee" that pro bono counsel will undertake representation and "until appointed counsel enters an appearance, they are responsible for all scheduled matters, including hearings, depositions, motions, and trial." *Id*. The Court further advised that they remain obligated "to comply with the Federal Rules of Civil Procedure, the Local Rules in this District, and all orders of this Court." *Id*. (citing *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)). The Court also set a deadline for Defendants Linnemeyer-Schlagel and Linnemeyer to "answer or otherwise respond to the Complaint [#1]." *Id*. That deadline was "either (1) June 30, 2025, or (2) 14 days after counsel enters an appearance on their behalf, whichever comes first." *Id*.

On May 29, 2025, the Clerk of Court filed a notice indicating that the Clerk was unable to identify an attorney available and willing to accept appointment on a pro bono basis. *Notice* [#65]. About two weeks later, on June 10, 2025, Plaintiff filed the operative Amended Complaint [#75]. Defendants Linnemeyer-Schlagel and Linnemeyer have not

filed a response to the operative complaint by the court-set deadline of June 30, 2025, even though they were advised that they are obligated to comply with all court orders. However, Plaintiff has not sought entry of default based on these two defendants' failure to respond.

Accordingly, IT IS HEREBY **ORDERED** that Plaintiff shall file a Motion for Clerk's Entry of Default **or** dismissal papers for Defendants Linnemeyer-Schlagel and Linnemeyer no later than **twenty-one days from the date of this Order**.

The Court addresses the remaining 10 defendants in a contemporaneously issued order to show cause.

## IV.    Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motions [#81, #83, #88, #94, #100] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's claims against Defendants Ethan Ice and Colorado Legal Defense Group be **dismissed without prejudice**.

IT IS **ORDERED** that Plaintiff shall file a Motion for Clerk's Entry of Default **or** dismissal papers for Defendants Linnemeyer-Schlagel and Linnemeyer no later than **twenty-one days from the date of this Recommendation and Order**.

IT IS FURTHER **ORDERED** that pursuant to Federal Rule of Civil Procedure 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Federal Rule of Civil

Procedure 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir.1996).

Dated: February 6, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge